(Slip Opinion) OCTOBER TERM, 2021 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GALLARDO, AN INCAPACITATED PERSON, BY AND THROUGH HER PARENTS AND CO-GUARDIANS VASSALLO ET AL. *v.* MARSTILLER, SECRETARY OF THE FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 20–1263.   Argued January 10, 2022—Decided June 6, 2022

Petitioner Gianinna Gallardo suffered catastrophic injuries resulting in permanent disability when a truck struck her as she stepped off her Florida school bus. Florida's Medicaid agency paid $862,688.77 to cover Gallardo's initial medical expenses, and the agency continues to pay her medical expenses. Gallardo, through her parents, sued the truck's owner and driver, as well as the Lee County School Board. She sought compensation for past medical expenses, future medical expenses, lost earnings, and other damages. That litigation resulted in a settlement for $800,000, with $35,367.52 expressly designated as compensation for past medical expenses. The settlement did not specifically allocate any amount for future medical expenses.

The Medicaid Act requires participating States to pay for certain needy individuals' medical costs and then to make reasonable efforts to recoup those costs from liable third parties. 42 U. S. C. §1396k(a)(1)(A). Under Florida's Medicaid Third-Party Liability Act, a beneficiary like Gallardo who "accept[s] medical assistance" from Medicaid "automatically assigns to the [state] agency any right" to third-party payments for medical care. Fla. Stat. §409.910(6)(b). Applied to Gallardo's settlement, Florida's statutory framework entitled the State to $300,000—*i.e.,* 37.5% of $800,000, the percentage the statute sets as presumptively representing the portion of the tort recovery that is for "past and future medical expenses," absent clear and convincing rebuttal evidence. §§409.910(11)(f)(1), (17)(b). Gallardo challenged the presumptive allocation in an administrative proceeding.

She also brought this lawsuit seeking a declaration that Florida was violating the Medicaid Act by trying to recover from portions of the settlement compensating for future medical expenses. The Eleventh Circuit concluded that the relevant Medicaid Act provisions do not prevent a State from seeking reimbursement from settlement monies allocated for future medical care. 963 F. 3d 1167, 1178.

*Held*: The Medicaid Act permits a State to seek reimbursement from settlement payments allocated for future medical care. Pp. 5–12.

(a) Gallardo argues that the Medicaid Act's anti-lien provision—which prohibits States from recovering medical payments from a beneficiary's "property," §1396p(a)(1)—forecloses recovery from settlement amounts other than those allocated for past medical care paid for by Medicaid. But this Court has held that the provision does not apply to state laws "expressly authorized by the terms of §§1396a(a)(25) and 1396k(a)" of the Medicaid Act. *Arkansas Dept. of Health and Human Servs.* v. *Ahlborn*, 547 U. S. 268, 284. Here, Florida's Medicaid Third-Party Liability Act—under which Florida may seek reimbursement from settlement amounts representing "payment for medical care," past or future—"is expressly authorized by the terms of . . . [§]1396k(a)" and thus falls squarely within the "exception to the anti-lien provision" that this Court has recognized. *Ibid.*

The plain text of §1396k(a)(1)(A) decides this case. Nothing in §1396k(a)(1)(A) limits a beneficiary's assignment to payments for *past* "medical care" already paid for by Medicaid. To the contrary, the grant of "any rights . . . to payment for medical care" most naturally covers not only rights to payment for past medical expenses, but also rights to payment for future medical expenses. §1396k(a)(1)(A); see *United States* v. *Gonzales*, 520 U. S. 1, 5. The relevant distinction is thus "between medical and nonmedical expenses," *Wos* v. *E. M. A.*, 568 U. S. 627, 641, not between past and future medical expenses.

Statutory context reinforces that §1396k(a)(1)(A)'s reference to "payment for medical care" is not limited as Gallardo suggests. For example, when the Medicaid Act separately requires state plans to comply with §1396k, it describes that provision as imposing a "mandatory assignment of rights of payment for *medical* support and other *medical* care owed to recipients." §1396a(a)(45) (emphasis added). Section 1396a(a)(45) thus distinguishes only between medical and nonmedical care, not between past (paid) medical care payments and future (unpaid) medical care payments. If Congress had intended to draw such a distinction, "it easily could have drafted language to that effect." *Mississippi ex rel. Hood* v. *AU Optronics Corp.*, 571 U. S. 161, 169. In fact, Congress did include more limiting language elsewhere in the Medicaid Act. Section 1396a(a)(25)(H), which requires States to enact

laws granting themselves automatic rights to certain third-party pay-
ments, contains precisely the limitation that Gallardo would read into
the assignment provision. Thus, if §1396k(a)(1)(A)'s broad language
alone were not dispositive, its contrast with the limiting language in
§1396a(a)(25)(H) would be. Pp. 5–7.

   (b) Gallardo's arguments that §1396k(a)(1)(A) has a different mean-
ing are unconvincing. Gallardo construes the prefatory clause to
§1396k(a)(1)(A)— which provides that the "purpose" of the assignment
provision is to "assis[t] in the collection of medical support payments
and other payments for medical care owed to recipients of medical as-
sistance under the State plan"—to limit the assignment provision to
payments that are already "owed" for "past medical care provided un-
der the [state] plan." Brief for Petitioner 30. But the prefatory clause
defines to whom the third-party payments are "owed"—"recipients of
medical assistance under the State plan." It does not specify the pur-
pose for which those payments must be made, referring to "medical
support" and "medical care" payments, consistent with the adjacent
language in §1396k(a)(1)(A).

   Gallardo also proposes that the Court read the assignment provision
to incorporate the more limited language in §1396a(a)(25)(H). But the
Court must give effect to, not nullify, Congress' choice to include lim-
iting language in some provisions but not others, see *Russello* v. *United
States*, 464 U. S. 16, 23. *Ahlborn*, which Gallardo contends eliminated
any daylight between §1396a(a)(25)(H) and §1396k(a)(1)(A), was clear
that these two provisions "ech[o]" or "reinforc[e]" each other insofar as
they both involve "recovery of payments for medical care," 547 U. S.,
at 282, and not "payment for, for example, lost wages," *id*., at 280. *Ahl-
born* did not suggest that these provisions must be interpreted in lock-
step. Gallardo's idea that one of these two complementary provisions
must "prevail" over the other is therefore mistaken. The complemen-
tary provisions concern different requirements; they do not conflict
just because one is broader than the other.

   Gallardo and the United States also argue that §1396k(a)(1)(A)
should be interpreted consistently with §§1396a(a)(25)(A) and (B),
which require a State to seek reimbursement "to the extent of" a third
party's liability "for care and services available under the plan." But
the relevant language—"pay[ment] for care and services available un-
der the plan"—could just as readily refer to payment for medical care
"available" in the future. Regardless, Congress did not use this lan-
guage to define the scope of an assignment under §1396k(a)(1)(A), im-
plying again that the provisions should not be interpreted the same
way. This implication is strengthened by the fact that §1396k(a)(1)(A)
was enacted after §§1396a(a)(25)(A) and (B), and Congress did not use
the existing language in §§1396a(a)(25)(A) and (B) to define the scope

of the mandatory assignment.

Finally, Gallardo's two policy arguments for her preferred interpretation both fail. First, citing a footnote from *Ahlborn*, she contends that it would be "'absurd and fundamentally unjust'" for a State to "'share in damages for which it has provided no compensation.'" 547 U. S., at 288, n. 19. But the Court's holding there was dictated by the Medicaid Act's "text," not by the Court's sense of fairness. *Id.*, at 280. Second, Gallardo speculates that the Court's reading of §1396k(a)(1)(A) would authorize a "lifetime assignment" covering not only the rights an individual has while a Medicaid beneficiary but also any rights acquired in the future when the individual is no longer a Medicaid beneficiary. Not so. The provision is most naturally read as covering those rights "the individual" possesses while on Medicaid. And given background legal principles about the scope of assignments, §1396k(a)(1)(A) cannot be read to cover the sort of "lifetime assignment" Gallardo invokes. Pp. 8–12.

963 F. 3d 1167, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, KAGAN, GORSUCH, KAVANAUGH and BARRETT, JJ., joined. SO-TOMAYOR, J., filed dissenting opinion in which, BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 20–1263
_____

GIANINNA GALLARDO, AN INCAPACITATED PERSON, BY AND THROUGH HER PARENTS AND CO-GUARDIANS PILAR VASSALLO AND WALTER GALLARDO, PETITIONER *v.* SIMONE MARSTILLER, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 6, 2022]

JUSTICE THOMAS delivered the opinion of the Court.

Medicaid requires participating States to pay for certain needy individuals' medical costs and then to make reasonable efforts to recoup those costs from liable third parties. Consequently, a State must require Medicaid beneficiaries to assign the State "any rights . . . to payment for medical care from any third party." 42 U. S. C. §1396k(a)(1)(A). That assignment permits a State to seek reimbursement from the portion of a beneficiary's private tort settlement that represents "payment for medical care," *ibid.*, despite the Medicaid Act's general prohibition against seeking reimbursement from a beneficiary's "property," §1396p(a)(1). The question presented is whether §1396k(a)(1)(A) permits a State to seek reimbursement from settlement payments allocated for future medical care. We conclude that it does.

# I
## A

States participating in Medicaid "must comply with [the Medicaid Act's] requirements" or risk losing Medicaid funding. *Harris* v. *McRae*, 448 U. S. 297, 301 (1980); see 42 U. S. C. §1396c. Most relevant here, the Medicaid Act requires a State to condition Medicaid eligibility on a beneficiary's assignment to the State of "any rights . . . to support . . . for the purpose of medical care" and to "payment for medical care from any third party." §1396k(a)(1)(A); see also §1396a(a)(45) (mandating States' compliance with §1396k). The State must also enact laws by which it automatically acquires a right to certain third-party payments "for health care items or services furnished" to a beneficiary. §1396a(a)(25)(H). And the State must use these (and other) tools to "seek reimbursement" from third parties "to the extent of [their] legal liability" for a beneficiary's "care and services available under the plan." §§1396a(a)(25)(A)–(B).

The Medicaid Act also sets a limit on States' efforts to recover their expenses. The Act's "anti-lien provision" prohibits States from recovering medical payments from a beneficiary's "property." §1396p(a)(1); see also §1396a(a)(18) (requiring state Medicaid plans to comply with §1396p). Because a "beneficiary has a property right in the proceeds of [any] settlement," the anti-lien provision protects settlements from States' reimbursement efforts absent some statutory exception. *Wos* v. *E. M. A.*, 568 U. S. 627, 633 (2013). State laws "requir[ing] an assignment of the right . . . to receive payments [from third parties] for medical care," as "expressly authorized by the terms of §§1396a(a)(25) and 1396k(a)," are one such exception. *Arkansas Dept. of Health and Human Servs.* v. *Ahlborn*, 547 U. S. 268, 284 (2006). Accordingly, a State may seek reimbursement from the portion of a settlement designated for the "medical care" described in those provisions; otherwise,

the anti-lien provision prohibits reimbursement. *Id.*, at 285.

## B

To satisfy its Medicaid obligations, Florida has enacted its Medicaid Third-Party Liability Act, which directs the State's Medicaid agency to "seek reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits, but not in excess of the amount of medical assistance paid by Medicaid." Fla. Stat. §409.910(4) (2017).[1] To this end, the statute provides that when a beneficiary "accept[s] medical assistance" from Medicaid, the beneficiary "automatically assigns to the [state] agency any right" to third-party payments for medical care. §409.910(6)(b). A lien "for the full amount of medical assistance provided" then "attaches automatically" to any settlements related to an injury "that necessitated that Medicaid provide medical assistance." §§409.910(6)(c), (6)(c)(1), 409.901(7)(a).

Rather than permit the State to recover from a beneficiary's entire settlement, the statute entitles Florida to half a beneficiary's total recovery, after deducting 25% for attorney's fees and costs (*i.e.*, 37.5% of the total). See §409.910(11)(f)(1). This amount presumptively represents the portion of the tort recovery that is for "past and future medical expenses." §409.910(17)(b). Beneficiaries can rebut that presumption by proving with clear and convincing evidence "that the portion of the total recovery which should be allocated as past and future medical expenses is less than the amount calculated by [Florida's] formula." *Ibid.*

———————
[1] For the sake of simplicity, we refer to the State, its Medicaid agency, or simply Medicaid interchangeably.

## C

In 2008, a truck struck then-13-year-old petitioner Gianinna Gallardo after she stepped off her school bus. Gallardo suffered catastrophic injuries and remains in a persistent vegetative state. Florida's Medicaid agency paid $862,688.77 to cover her initial medical expenses, after WellCare of Florida, a private insurer, paid $21,499.30. As a condition of receiving Medicaid assistance, Gallardo had assigned Florida her right to recover from third parties. Because Gallardo is permanently disabled, Medicaid continues to pay her medical expenses.

Gallardo, through her parents, sued the truck's owner and driver, as well as the Lee County School Board, seeking compensation for past medical expenses, future medical expenses, lost earnings, and other damages. Although Gallardo sought over $20 million in damages, the litigation ultimately settled for $800,000—a 4% recovery. The settlement expressly designated $35,367.52 of that amount as compensation for past medical expenses—4% of the $884,188.07 paid by Medicaid and WellCare. The settlement also recognized that "some portion of th[e] settlement may represent compensation for future medical expenses," App. 29, but did not specifically allocate any amount for future medical expenses.

Under Florida's statutory formula, the State was presumptively entitled to $300,000 of Gallardo's settlement (37.5% of $800,000). Gallardo, citing the settlement's explicit allocation of only $35,367.52 as compensation for past medical expenses, asked Florida what amount it would accept to satisfy its Medicaid lien. When Florida did not respond, Gallardo put $300,000 in escrow and challenged the presumptive allocation in an administrative proceeding. There, Florida defended the presumptive allocation because, in its view, it could seek reimbursement from settlement payments for past *and* future medical expenses, and so was not limited to recovering the portion Gallardo had

allocated for past expenses.

While the administrative proceeding was ongoing, Gallardo brought this lawsuit seeking a declaration that Florida was violating the Medicaid Act by trying to recover from portions of the settlement compensating for future medical expenses. The U. S. District Court for the Northern District of Florida granted Gallardo summary judgment. See *Gallardo* v. *Dudeck*, 263 F. Supp. 3d 1247, 1260 (2017). The Eleventh Circuit reversed, concluding that "the text and structure of the federal Medicaid statutes do not conflict with Florida law" because they "only prohibit a State from asserting a lien against any part of a settlement not 'designated as payments for medical care.'" *Gallardo* v. *Dudeck*, 963 F. 3d 1167, 1176 (2020) (quoting *Ahlborn*, 547 U. S., at 284). The Eleventh Circuit explained that the relevant Medicaid Act provisions "d[o] not in any way prohibit [a State] from seeking reimbursement from settlement monies for medical care allocated to future care." 963 F. 3d, at 1178 (emphasis deleted). Judge Wilson dissented, contending that the Medicaid Act "limit[s] the state to the part of the recovery that represents payment for past medical care." *Id.*, at 1184.

Because the Supreme Court of Florida came to the opposite conclusion of the Eleventh Circuit, see *Giraldo* v. *Agency for Health Care Admin.*, 248 So. 3d 53, 56 (2018), we granted certiorari, 594 U. S. \_\_\_ (2021).

## II

Gallardo argues that the Eleventh Circuit erred by permitting Florida to seek reimbursement for medical expenses from settlement amounts representing payment for future medical care. According to Gallardo, the Medicaid Act's anti-lien provision in §1396p forecloses recovery from settlement amounts other than those allocated for past medical care paid for by Medicaid. Thus, Gallardo concludes, the anti-lien provision preempts any state law that

permits additional recovery.

We disagree. Under §1396k(a)(1)(A), Florida may seek reimbursement from settlement amounts representing "payment for medical care," past or future. Thus, because Florida's assignment statute "is expressly authorized by the terms of . . . [§]1396k(a)," it falls squarely within the "exception to the anti-lien provision" that this Court has recognized. *Ahlborn*, 547 U. S., at 284.

## A

The plain text of §1396k(a)(1)(A) decides this case. This provision requires the State to acquire from each Medicaid beneficiary an assignment of "any rights . . . of the individual . . . to support . . . for the purpose of medical care . . . and to payment for medical care from any third party." §1396k(a)(1)(A). Nothing in this provision purports to limit a beneficiary's assignment to "payment for" *past* "medical care" already paid for by Medicaid. To the contrary, the grant of "*any* rights . . . to payment for medical care" most naturally covers not only rights to payment for past medical expenses, but also rights to payment for future medical expenses. *Ibid.* (emphasis added); see *United States* v. *Gonzales*, 520 U. S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning"). The relevant distinction is thus "between medical and nonmedical expenses," *Wos*, 568 U. S., at 641, not between past expenses Medicaid has paid and future expenses it has not.

Statutory context reinforces that §1396k(a)(1)(A)'s reference to "payment for medical care" is not limited as Gallardo suggests. First, when §1396k(a)(1)(A) limits the kind of "support" (*e.g.*, child support) covered by a beneficiary's assignment, the statute does not single out support allocated for past expenses that a State has already paid. Instead, it requires only that support payments be "specified as support *for the purpose of medical care*" generally.

§1396k(a)(1)(A) (emphasis added). Second, when the Medicaid Act separately requires state plans to comply with §1396k, it describes that provision as imposing a "mandatory assignment of rights of payment for *medical* support and other *medical* care owed to recipients." §1396a(a)(45) (emphasis added). In short, §1396k(a)(1)(A) and §1396a(a)(45) distinguish only between medical and non-medical care, not between past (paid) medical care payments and future (unpaid) medical care payments. If Congress had intended to draw such a distinction, "it easily could have drafted language to that effect." *Mississippi ex rel. Hood* v. *AU Optronics Corp.*, 571 U. S. 161, 169 (2014).

In fact, Congress did include such limiting language elsewhere in the Medicaid Act. Section 1396a(a)(25)(H), which requires States to enact laws granting themselves automatic rights to certain third-party payments, contains precisely the limitation that Gallardo would read into the assignment provision. That provision applies only when "payment has been made under the State plan for medical assistance for health care items or services *furnished* to an individual," and covers only third-party payments "for *such* health care items or services." §1396a(a)(25)(H) (emphasis added). Thus, if §1396k(a)(1)(A)'s broad language alone were not dispositive, its contrast with the limiting language in §1396a(a)(25)(H) would be. "Had Congress intended to restrict" §1396k(a)(1)(A) to past expenses Medicaid has paid, it "would have done so expressly as it did in" §1396a(a)(25)(H). *Russello* v. *United States*, 464 U. S. 16, 23 (1983).

In sum, because the plain meaning of §1396k(a)(1)(A), informed by statutory context, allows Florida to seek reimbursement from settlement amounts representing past or future "payments for medical care," Florida's assignment

provision falls within the "exception to the anti-lien provision." *Ahlborn*, 547 U. S., at 284.[2]

B

Gallardo nevertheless argues that §1396k(a)(1)(A) has a different meaning, largely by discounting the text of §1396k(a)(1)(A) and then relying on other differently worded provisions or on policy arguments, none of which we find convincing.

Insofar as she confronts §1396k(a)(1)(A) itself, Gallardo largely focuses on its prefatory clause, which provides that the "purpose" of the assignment provision is to "assis[t] in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan." §1396k(a). Gallardo construes this language to limit the assignment provision to payments that are already "owed" for "*past* medical care provided under the [state] plan." Brief for Petitioner 30.

Gallardo's argument misreads the statutory text. The prefatory clause does not refer to payments "owed" "under the State plan," but rather to "payments owed *to recipients of medical assistance* under the State plan." §1396k(a) (emphasis added). In other words, the prefatory language Gallardo invokes defines *to whom* the third-party payments are "owed"—"recipients of medical assistance under the State

———————

[2] According to the dissent, our conclusion conflicts with the "background principl[e] of insurance law" that an insurer's third-party recovery is limited "'to the same elements as those for which [the insurer] has made payment.'" *Post*, at 9 (opinion of SOTOMAYOR, J.) (quoting 16 S. Plitt, D. Maldonado, J. Rogers, & J. Plitt, Couch on Insurance §226:36 (3d ed. 2021)). But even assuming this principle is relevant as the dissent supposes, the dissent concedes that it gives way if a "contractual ter[m]"—an assignment provision, for example—permits a broader recovery. *Post*, at 9; see also, *e.g.*, 16 Couch on Insurance §222:63 (citing examples). Here, §1396k(a)(1)(A) mandates an assignment provision that does just that.

plan." It does not specify *the purpose* for which those payments must be made. On that score, the prefatory clause refers to "medical support" and "medical care" payments, consistent with the adjacent language in §1396k(a)(1)(A).

With little support in the text of §1396k(a)(1)(A), Gallardo proposes that we read the assignment provision to incorporate §1396a(a)(25)(H)'s more limited language. But as explained above, see *supra*, at 7, we must give effect to, not nullify, Congress' choice to include limiting language in some provisions but not others, see *Russello*, 464 U. S., at 23. Gallardo responds that our decision in *Ahlborn* eliminated any daylight between §1396a(a)(25)(H) and §1396k(a)(1)(A), because we said there that these provisions "reiterat[e]," "reinforc[e]," and "ech[o]" each other. 547 U. S., at 276, 280, 281. But *Ahlborn* was clear that these two provisions "ech[o]" or "reinforc[e]" each other insofar as they both involve "recovery of payments for medical care," *id.*, at 282, and not "payment for, for example, lost wages," *id.*, at 280. *Ahlborn* did not suggest that we must otherwise interpret these provisions in lockstep.

Conceding the provisions' scope could differ, Gallardo argues that the later enacted §1396a(a)(25)(H) should "prevai[l]" over the earlier enacted §1396k(a)(1)(A). Brief for Petitioner 34. But Gallardo does not identify any conflict requiring one of the provisions to prevail. Both provisions require the State to obtain rights—either by assignment or by statute—to certain third-party payments. Because they concern different requirements, they do not conflict just because one is broader in scope than the other. In fact, the provisions complement each other. Section 1396k(a)(1)(A) provides a broad, but not foolproof, contractual right to third-party payments for medical care. See Brief for Respondent 33–34 (explaining circumstances when an assignment under §1396k(a)(1)(A) might be ineffective). By contrast, §1396a(a)(25)(H) provides a more targeted statutory right for when the assignment might fail. See Brief for

United States as *Amicus Curiae* 28–29 (explaining that, prior to §1396a(a)(25)(H)'s enactment, insurers were "thwarting [§1396k(a)(1)(A)] by refusing to recognize assignments and arguing that their insurance contracts forbade assignments" (internal quotation marks omitted)).[3] Thus, the idea that one of these two complementary provisions must "prevail" over the other is mistaken.

Gallardo and the United States also invoke §§1396a(a)(25)(A) and (B), which require States to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [Medicaid] plan" and to "seek reimbursement . . . to the extent of such legal liability." They argue that these provisions are the Medicaid Act's "main" or "anchor" third-party liability provisions and limit the State's recovery under any other provision "to the extent of" a third party's payments "for care and services available under the plan," §§1396a(a)(25)(A)–(B), which they interpret to include only payments for medical care that Medicaid has already covered. Reply Brief 6 (internal quotation marks omitted); see Brief for United States as *Amicus Curiae* 18.

This argument suffers from several problems. To begin,

---

[3] The United States makes a similar argument when it relies on §1396a(a)(25)(I)(ii), under which States must enact laws requiring health insurers to "accept the State's right of recovery and the assignment to the State of any right of an individual or other entity to payment from the party for an item or service for which payment has been made under the State plan." We disagree that this provision "suggests that Congress understood the assignment of rights under Section 1396k to be limited to third-party payments for services covered by Medicaid." Brief for United States as *Amicus Curiae* 19. Like §1396a(a)(25)(H), this provision targets specific attempts by health insurers to avoid making payments to state Medicaid programs. Its narrower focus on health insurers, who typically pay only once medical services are rendered, explains its application to a narrower category of third-party payments, and says little to nothing about the meaning of §1396k(a)(1)(A)'s broader scope.

it is far from clear that §§1396a(a)(25)(A) and (B) refer only
to past expenses the State has already paid. The relevant
language—"pay[ment] for care and services available under
the plan"—could just as readily refer to payment for medi-
cal care "available" in the future. Regardless, even if this
language means what Gallardo says it does, Congress did
not use this language to define the scope of an assignment
under §1396k(a)(1)(A), implying again that the provisions
should not be interpreted the same way. See *supra*, at 7.
This implication is strengthened by the fact that
§1396k(a)(1)(A) was enacted after §§1396a(a)(25)(A) and
(B). It would have been easy for Congress to use the exist-
ing language in §§1396a(a)(25)(A) and (B) to define the
scope of the mandatory assignment. But it did not.[4]

Finally, Gallardo relies on two policy arguments for her
preferred interpretation. First, citing a footnote from *Ahl-
born*, she contends that it would be "'absurd and fundamen-
tally unjust'" for a State to "'share in damages for which it
has provided no compensation.'" 547 U. S., at 288, n. 19
(quoting *Flanigan* v. *Department of Labor and Industry*,
123 Wash. 2d 418, 426, 869 P. 2d 14, 17 (1994)). Although
*Ahlborn* noted possible unfairness if States were given "ab-
solute priority" to collect from the entirety of a tort settle-
ment, 547 U. S., at 288, our holding there was dictated by
the Medicaid Act's "text," not by our sense of fairness, *id.*,
at 280. Had the text of the Medicaid Act authorized "abso-
lute priority," *Ahlborn* would have been decided differently.

Second, Gallardo speculates that our reading of
§1396k(a)(1)(A) would authorize a "lifetime assignment"
covering not only the rights an individual has while he is a
Medicaid beneficiary but also any rights he acquires in the
future when he is no longer a Medicaid beneficiary. Brief

_____

[4] That Congress required States' compliance with §1396k(a)(1)(A) via
a separate paragraph—§1396a(a)(45)—rather than subordinating it un-
der §1396a(a)(25), supports our conclusion that they need not be inter-
preted in lockstep.

for Petitioner 32. Not so. Section 1396k(a)(1)(A) only as-
signs "any rights . . . *of the individual*" (emphasis added),
which is most naturally read as covering those rights "the
individual" possesses while on Medicaid. We must also
read §1396k(a)(1)(A)'s text in light of background legal prin-
ciples, and it is blackletter law that assignments typically
cover "only [those] rights possessed by the assignors at the
time of the assignments," *United States* v. *Central Gulf
Lines, Inc.*, 974 F. 2d 621, 629 (CA5 1992); see also 6A
C. J. S., Assignments §88 (2022), or those rights "expected
to arise out of an existing . . . relationship," see Restate-
ment (Second) of Contracts §321(1) (1981); see also 9
A. Corbin, Contracts §50.1 (2022). Given that legal back-
drop, §1396k(a)(1)(A) cannot cover the sort of "lifetime as-
signment" Gallardo invokes.[5]

*    *    *

For these reasons, we affirm the judgment of the Court of
Appeals.

*It is so ordered.*

---

[5] Florida also suggested at argument that §1396k(a)(1)(A) includes a
germaneness requirement such that the assignment extends only to pay-
ments for medical care germane—*i.e.*, related—to an injury or illness for
which Medicaid covered treatment. See Tr. of Oral Arg. 69. However,
we have no adversary briefing on this issue and no cause to resolve it. It
is undisputed that the settlement from which Florida seeks recovery is
germane to the injury for which Florida paid out Medicaid funds, and
Florida law requires as much. See Fla. Stat. §409.910(6)(c).

# SUPREME COURT OF THE UNITED STATES

———————

No. 20–1263

———————

GIANINNA GALLARDO, AN INCAPACITATED PERSON, BY AND THROUGH HER PARENTS AND CO-GUARDIANS PILAR VASSALLO AND WALTER GALLARDO, PETITIONER *v.* SIMONE MARSTILLER, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 6, 2022]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, dissenting.

Where a Medicaid beneficiary recovers an award or settlement from a tortfeasor for medical expenses, specific provisions of the Medicaid Act direct a State to reimburse itself from that recovery for care for which it has paid. These provisions constitute a limited exception to the Act's default rule prohibiting a State from imposing a lien against the beneficiary's property or seeking to use any of that property to reimburse itself. Accordingly, a State may claim portions of the beneficiary's tort award or settlement representing payments for the beneficiary's medical care, but not those representing other compensation to the beneficiary (*e.g.,* damages for lost wages or pain and suffering). *Arkansas Dept. of Health and Human Servs.* v. *Ahlborn*, 547 U. S. 268, 282–286 (2006). This statutory structure recognizes that it would be "'fundamentally unjust'" for a state agency to "'share in damages for which it has provided no compensation.'" *Id.,* at 288, n. 19.

Today, however, the Court permits exactly that. It holds

that States may reimburse themselves for medical care furnished on behalf of a beneficiary not only from the portions of the beneficiary's settlement representing compensation for Medicaid-furnished care, but also from settlement funds that compensate the Medicaid beneficiary for future medical care for which Medicaid has not paid and might never pay. The Court does so by reading one statutory provision in isolation while giving short shrift to the statutory context, the relationships between the provisions at issue, and the framework set forth in precedent. The Court's holding is inconsistent with the structure of the Medicaid program and will cause needless unfairness and disruption. I respectfully dissent.

I

Congress conditions a State's receipt of federal Medicaid funding, see 42 U. S. C. §1396d(b), on compliance with federal requirements for the program. The Court today details at length one of these requirements: that a state Medicaid plan pursue reimbursement for the State's payments where reimbursement is available from a third party. See *ante,* at 1–3. It devotes comparatively little attention to another central requirement: that a State not assert claims against the property of Medicaid beneficiaries or recipients.

Under the Medicaid Act's anti-lien provision, enacted in 1965 as part of the original Act, "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance" provided under the state Medicaid plan, whether "paid or to be paid." §1396p(a)(1); see *Ahlborn*, 547 U. S., at 283–284. In addition, the Act's anti-recovery provision, also enacted in 1965, provides that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made." §1396p(b)(1). Together, the anti-lien and anti-recovery provisions establish that acceptance of Medicaid does not render a beneficiary indebted to the State or

give the State any claim to the beneficiary's property. In other words, Medicaid is not a loan. If a Medicaid beneficiary's financial circumstances change and a beneficiary gains the ability to pay for his or her own medical expenses, the beneficiary is not obligated to repay the State for past expenses, no matter the magnitude of the change in circumstances. Rather, the ordinary consequence is that the individual simply becomes ineligible for benefits moving forward.[1]

In *Ahlborn*, this Court held that the Medicaid provisions enabling the State to seek reimbursement from third parties liable for a beneficiary's medical care (discussed in detail below) establish a narrow exception to the anti-lien provision. The exception applies where the beneficiary directly sues a tortfeasor for payment of medical costs.[2] As a threshold matter, the Court held that a beneficiary's settlement proceeds qualified as beneficiary "property" protected by the anti-lien provision unless an exception to that provision applied. *Id.*, at 285–286. The Court further held that Medicaid's assignment to the State of rights to reimbursement from third parties "carved out" an "exception to the anti-

——————

[1] Petitioner Gianinna Gallardo has continued to receive Medicaid benefits, despite the proceeds from her tort settlement, because those proceeds were transferred into a congressionally authorized Special Needs Trust, a narrow exception to Medicaid's asset limits. See Reply Brief 22, n. 6. Such a trust exists to pay expenses not covered by Medicaid, which may include, for example, certain home nursing care or a home ramp for a wheelchair. Upon a beneficiary's death, all trust assets are transferred to the State until the State is fully reimbursed for all medical assistance it has furnished. See §1396p(d)(4)(A); Brief for American Justice Association et al. as *Amici Curiae* 4–7.

[2] The *Ahlborn* Court "assume[d]" without deciding "that a State can fulfill its obligations under the federal third-party liability provisions by . . . placing a lien on . . . the settlement that a Medicaid recipient procures on her own." *Arkansas Dept. of Health and Human Servs.* v. *Ahlborn*, 547 U. S. 268, 280, n. 9 (2006); see also *id.,* at 281 ("assuming" that one of these provisions, §1396k(b), "applies in cases where the State does not actively participate in the litigation").

lien provision" permitting the State "to recover that portion of a settlement that represents payments for medical care." *Id.*, at 282, 284–285.

Importantly, the *Ahlborn* Court rejected the State's claim that it could seek reimbursement more broadly from the remainder of the settlement funds. It held that "the anti-lien provision applies" to bar a State's assertion of a lien beyond the portion of a settlement representing payments for medical care. *Id.*, at 285; accord, *Wos* v. *E. M. A.*, 568 U. S. 627, 636 (2013). As relevant to the case before it, the *Ahlborn* Court concluded that the State could not recover from portions of a settlement representing compensation "for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings." 547 U. S., at 272. The Court noted that it would be "unfair to the recipient" and "'absurd'" for the State to "'share in damages for which it has provided no compensation.'" *Id.,* at 288, and n. 19.

## II

The Court summarizes Florida's Medicaid Third-Party Liability Act and the facts of petitioner Gianinna Gallardo's case. See *ante,* at 3–5. The question presented is whether the exception to the anti-lien provision recognized in *Ahlborn* extends to permit Florida to claim the share of Gallardo's settlement allocated for her future medical expenses as compensation for the State's expenditures for her past medical expenses.

Before answering that question, a note is in order about what is not in dispute. Consider a hypothetical example in which Florida has spent $1,000 on a beneficiary's medical care, after which the beneficiary secures a $1,500 tort settlement, $200 of which is allocated for those already-incurred medical expenses, $500 of which is allocated for future medical care, and the remainder of which ($800) compensates for nonmedical expenses. The parties agree,

as they must, that Florida cannot recover anticipated expenses for services it has not furnished, but may pursue reimbursement only for expenses it has paid (*i.e.,* Florida can recover no more than $1,000). The parties further agree that Florida can recover these expenses from the portion of the beneficiary's settlement allocated for these expenses (*i.e.,* the $200), and that Florida can challenge the allocation of the settlement if it contends that too low a portion was designated for past medical expenses. The parties also do not dispute that Florida cannot recover from the $800 representing nonmedical expenses. The only dispute is whether Florida also may recover its past medical costs from the distinct portion of the beneficiary's settlement representing future medical expenses (*i.e.,* the $500)—expenses it has not paid and might never pay. Under a proper reading of the applicable statutory provisions in context, Florida may not do so.

As *Ahlborn* explains, Florida's ability to seek reimbursement from Gallardo's settlement hinges on establishing that an exception to the anti-lien and anti-recovery provisions applies. Several provisions, enacted over a span of decades, set forth the exception relevant here. The first, §§1396a(a)(25)(A) and (B) (collectively, the third-party liability provision), was enacted three years after the Medicaid Act and the anti-lien and anti-recovery provisions. The third-party liability provision authorizes a State only to recover for "medical assistance" that "*has been made* available on behalf of the individual," and only "*after* medical assistance has been made available." §1396a(a)(25)(B) (emphasis added). And it authorizes recovery only "to the extent of," *ibid.,* "the legal liability of third parties . . . to pay for care and services available under the plan," §1396a(a)(25)(A). In this context, the provision's reference to care "available under the plan" can only be understood to refer to care that is available by virtue of having been paid under the plan, not care that theoretically may or may not

be made available in the future.  Put differently, as a textual matter, this provision extends only to a third party's liability to pay for services actually furnished by a state plan.

Congress subsequently enacted two legal tools for a State to use when seeking reimbursement, consistent with the third-party liability provision, for services paid.

The first of these tools is the assignment provision, §1396k(a)(1)(A), enacted in 1977 and made mandatory in 1984.  In that provision, to "assis[t] in the collection of . . . payments for medical care," §1396k(a), Congress required each state Medicaid plan to condition eligibility on assignment of "any rights" of the beneficiary "to payment for medical care from any third party," §1396k(a)(1)(A).  Florida rests its argument on the understanding that this language confers upon it a right to recover payments designated for medical care regardless of whether those payments compensate for medical care for which Florida actually has paid.

Several textual signals foreclose Florida's interpretation of the assignment provision.  For one, the provision, by its terms, does not stand alone.  Instead, Congress enacted it "[f]or the purpose of assisting in [a State's] collection of" payments for medical care owed to beneficiaries. §1396k(a). It would be anomalous, then, to read the provision to reach beyond the third-party liability provision it "assist[s]" in implementing. *Ibid.*; see *Guam* v. *United States*, 593 U. S. ___, ___ (2021) (slip op., at 6) (similarly interpreting a statutory provision in light of an earlier "anchor provision").  Supporting that understanding, Congress later amended the statute containing the assignment provision to require beneficiaries "to cooperate with the State in identifying . . . any third party who may be liable to pay for care and services available under the plan." §1396k(a)(1)(C) (the cooperation provision).  The cooperation provision echoes the third-party liability provision's focus on care "available under the

plan." *Ibid.* It would be bizarre for Congress to mandate a more far-reaching assignment of a beneficiary's right to payment for all medical support, paid or unpaid, but limit the beneficiary's duty to cooperate only to services paid. Finally, another provision of the Act directs each State to pass laws requiring insurers to "accept . . . the assignment to the State of any right of an individual or other entity to payment . . . for an item or service for which payment has been made under the State plan." §1396a(a)(25)(I)(ii). In this insurer acceptance provision, Congress described the assignment provision's mandate as specific to third-party payments for services the State plan has funded. Taken together, these textual indicators establish that the assignment provision reaches only a third party's liability for services made available by Medicaid, not liability for services for which Medicaid has not paid and may never pay.

The second tool Congress enacted to implement the third-party liability provision is the acquisition provision, §1396a(a)(25)(H). A 1990 General Accounting Office report found that some health insurers were "thwart[ing]" the assignment provision by "refusing to pay [States] for any of several reasons," including by declining to recognize Medicaid assignments or by insisting that such assignments conflicted with their insurance contracts. Medicaid: Legislation Needed to Improve Collections From Private Insurers 5 (GAO/HRD–91–25, Nov.). Congress addressed this in 1993 by directing each State to enact laws under which the State automatically acquires a beneficiary's rights to third-party payments specifically "for health care items or services furnished" to the beneficiary, without the need for separate assignments. §1396a(a)(25)(H). The text of this acquisition provision, too, clearly restricts a State's acquisition to the portion of a third-party payment pertaining to "health care items or services" for which "payment has been made under the State plan" and does not extend

to third-party payments for services the plan has not furnished. *Ibid.*; see *ante,* at 7.

This Court's task is to interpret these provisions "'as a symmetrical and coherent regulatory scheme'" while "'fit[ting] . . . all parts into an harmonious whole.'" *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 133 (2000). Doing so here leads to only one "symmetrical and coherent" conclusion: that the assignment and acquisition provisions work in tandem to effectuate the third-party liability provision. As explained by the United States as *amicus curiae* in support of Gallardo, Congress "added the belt" (the acquisition provision) "because it feared that the suspenders" (the assignment provision) "were not doing their job." Brief for United States as *Amicus Curiae* 29. The two provisions take different paths toward the same goal, and each reinforces the other. All of the provisions enable a State to reimburse itself for expenses it has paid, not for expenses it may or may not incur in the future. None of the provisions authorize a State to seek such reimbursement from the portions of a beneficiary's tort settlement representing payments for care for which the State has not paid.

This interpretation is also consistent with the structure of the Medicaid program as a whole, under which a State's recovery from a beneficiary's compensation in tort is permissible under a narrow exception to the general, asset-protective rule established by the anti-lien and anti-recovery provisions. *Ahlborn* further explained that the third-party liability provision and acquisition provision both "reinforce[d] the limitation implicit in the assignment provision." 547 U. S., at 280. In particular, the Court described the acquisition provision's requirement (that a State enact laws under which it acquires a beneficiary's rights to third-party payments for "health care items or services furnished to an individual" "under the State plan," §1396a(a)(25)(H)) as "reiterat[ing]" and "echo[ing]" the assignment provision's

requirement (that a state plan condition eligibility on a ben-eficiary's assignment of rights to payment). *Id.,* at 276, 281. *Ahlborn*'s repeated recognition of the relationships between these three provisions cannot be squared with Florida's pri-mary argument, which would sever the provisions and read the assignment provision to eclipse the limitations of the other two.

Moreover, Medicaid is an insurance statute, and *Ahl-born*'s discussion of the unfairness that would ensue from a State's "'shar[ing] in damages for which it has provided no compensation,'" *id.,* at 288, n. 19, tracks background prin-ciples of insurance law. Under those principles, recovery by an insurer against a third party "is generally limited to the same elements as those for which [the insurer] has made payment," absent contractual terms to the contrary. 16 S. Plitt, D. Maldonado, J. Rogers, & J. Plitt, Couch on Insur-ance §226:36 (3d ed. 2021); see Brief for United States as *Amicus Curiae* 21–22. This, too, supports a cohesive read-ing of these provisions as allowing States to recover their past expenses only from sources that compensate for the care and services state plans actually have furnished.[3]

An additional absurdity would flow from an overbroad reading of the assignment provision decoupled from its com-panions. Florida maintains that the assignment provision's reference to "any rights . . . to payment for medical care

_____

[3] Much as an insurer might modify this default rule under contract, Congress could do so by statute. The parties agree that Congress did so as to Medicare, which appears to permit a broader scope of recovery for services (both furnished and to be furnished) from a third party's liability in tort. 42 U. S. C. §2651(a); see Brief for Respondent 41; Reply Brief 8–9. But see §2652(c) (providing that "[n]o action taken by the United States . . . shall operate to deny to the injured person the recovery for that portion of his damage not covered" under Medicare). Any difference between the two programs reflects Medicaid's focus on the needy, as well as the fact that individuals may lose and regain Medicaid eligibility over time based on changes in their circumstances, whereas most Medicare enrollees are seniors entitled to coverage for the rest of their lives.

from any third party," §1396k(a)(1)(A), permits recovery from settlement funds compensating for all medical expenses, past or future. If this provision were interpreted in isolation to sweep so broadly, however, its text would place no temporal limitation on the rights assigned to the State. For example, if Medicaid were to fund an individual's medical care as a teenager, the State would be entitled to recover the costs of that care from any unrelated future tort settlement for medical expenses, regardless of whether the individual remained on Medicaid or the state plan furnished any services related to those future injuries. Such a nonsensical "lifetime assignment," Brief for Petitioner 32, would constitute an "unfair" erosion of the anti-lien provision, *Ahlborn*, 547 U. S., at 288, contravening Congress' careful design. In contrast, a harmonious reading of the statute, consistent with *Ahlborn*, limits the funds from which a State may recover to those awarded for expenses paid and therefore presents no such concern.

## III

Despite the foregoing, the Court reads the assignment provision standing alone to establish, unlike all the other provisions of the Act at issue, a substantially broader right to recover from payments for all medical care, whether paid by the State or not. The Court commits several errors on the path to its holding, which departs from the statutory scheme as understood in *Ahlborn* and forces the Court to adopt an implausible workaround in order to mitigate the absurd consequence, discussed above, of its acontextual reading.

### A

The Court's analysis starts off backward. The Court states first that the Act requires a State to condition Medicaid eligibility on assignment of rights, and only then notes

that the anti-lien provision "also" limits States' recovery ef-
forts. *Ante,* at 2. In fact, the anti-lien and anti-recovery
provisions establish a general rule, and the subsequently
enacted third-party liability provision and its companions
create a limited exception. That exception, in turn, should
not be construed "to the farthest reach of [its] linguistic pos-
sibilit[y] if that result would contravene the statutory de-
sign." *Maracich* v. *Spears*, 570 U. S. 48, 60 (2013). The
Court's misframing, however, causes it to displace the back-
ground principle of the anti-lien and anti-recovery provi-
sions by relying on language in the assignment provision
that is vague at best.

The Court places great weight on the assignment provi-
sion's use of the word "any" in its reference to "rights . . . to
payment for medical care." §1396k(a)(1)(A); see *ante,* at 6.
The Court presumes that "'[t]he word "any" has an expan-
sive meaning.'" *Ibid.* But whether the word "any" indicates
an intent to sweep broadly "necessarily depends on the stat-
utory context." *National Assn. of Mfrs.* v. *Department of
Defense*, 583 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 11). Here, as
explained, statutory context establishes that the word "does
not bear the heavy weight the [Court] puts upon it." *Ibid.*
To the extent the Court suggests the word "any" supersedes
all other contrary contextual indications, it ignores prece-
dent. See, *e.g., United States* v. *Alvarez-Sanchez*, 511 U. S.
350, 356–358 (1994) (relying on context to interpret "'any
law-enforcement officer or law-enforcement agency'" as
limited to those making arrests under federal law).

The Court also repeatedly relies on the fact that the ac-
quisition provision and third-party liability provision use
specific language to limit the pool from which a State may
recover to funds that compensate for expenses Medicaid has
paid, whereas the assignment provision uses different lan-
guage. See *ante,* at 7, 9, 11. The Court invokes the pre-
sumption that "'[w]here Congress includes particular lan-
guage in one section of a statute but omits it in another

section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello* v. *United States*, 464 U. S. 16, 23 (1983). This is unpersuasive. Putting aside the many contextual clues that support Gallardo's reading of the assignment provision, see *supra,* at 6–7, the presumption the Court cites is "'strongest' in those instances in which the relevant statutory provisions were 'considered simultaneously when the language raising the implication was inserted.'" *Gómez-Pérez* v. *Potter*, 553 U. S. 474, 486 (2008). It has less force where, as here, different Congresses enacted the provisions at issue over the course of multiple decades. The presumption is especially unhelpful in this case because it cuts both ways: Since 1965, the anti-lien provision has specified that a State may not impose a lien against a beneficiary's property "on account of medical assistance paid *or to be paid* on his behalf." §1396p(a)(1) (emphasis added). Accepting the Court's logic, Congress should have required an assignment that unambiguously reached payments for both furnished and unfurnished care using this existing "paid or to be paid" language, but it failed to do so in the assignment provision. See *ante,* at 11.

Meanwhile, the Court fails to give due regard to the clear textual limitations imposed by the Act as a whole. For instance, as to the assignment provision's mirror image in the insurer acceptance provision, see *supra,* at 7, the Court reasons that the latter's "narrower focus on health insurers, who typically pay only once medical services are rendered, explains its application to a narrower category of third-party payments," *ante,* at 10, n. 3. This is beside the point. In the assignment provision, Congress required beneficiaries to assign certain rights to the State; in the insurer acceptance provision, it required insurers to accept that assignment. It makes no sense that Congress would require insurers to accept only a sliver of the mandatory assignment, regardless of how insurers typically pay.

Ultimately, "[s]tatutory construction . . . is a holistic endeavor." *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 371 (1988). Yet rather than reading the assignment provision in a manner "compatible with the rest of the law," *ibid.*, the Court disconnects it from much of the Act. The Court does not hold that the third-party liability provision extends as far as its reading of the assignment provision. See *ante,* at 10–11; see also *supra,* at 5–6. The Court also agrees that the acquisition provision is "more limited," meaning that the scope of that provision, too, "differ[s]" from that of the assignment provision. *Ante,* at 9. To justify these anomalies, the Court asserts that Congress, in enacting the acquisition provision, saw fit to "provid[e] a more targeted statutory right for when the assignment might fail." *Ibid.* The Court offers little explanation, however, for why Congress might have narrowed such a necessary backstop in this way. The statutory hodgepodge the Court perceives contrasts sharply with the reasonable scheme Congress actually crafted.

B

The Court's reasoning also contradicts precedent. The Court distinguishes *Ahlborn* because that case did not squarely hold that the relevant provisions "must" be interpreted in "lockstep," and it reduces *Ahlborn*'s concern about fairness to a disfavored "policy argumen[t]" that must yield to text. *Ante,* at 9, 11. But *Ahlborn*'s analysis reflected the Court's view of the text and context of the Act as a cohesive whole. It is not only "our sense of fairness," *ante,* at 11, but Congress' sense of fairness, as codified in the Act's anti-lien and anti-recovery provisions and recognized in *Ahlborn*, that demonstrates the Court's error.

The Court itself appears to recognize that its textual analysis leads to unfair and absurd results, leading it to suggest an unpersuasive workaround. The Court responds to the lifetime-assignment quandary, see *supra,* at 9–10, by

reasoning that the assignment provision's use of the phrase
"'any rights . . . *of the individual*'" is "most naturally read"
to impose a temporal limitation to rights possessed while on
Medicaid, *ante,* at 11–12. Neither party even suggests this
reading of the statute.[4] That is because it is anything but
natural, especially under the interpretive approach the
Court uses today. An "individual" continues to be an "indi-
vidual" for the duration of his or her life, whether on or off
Medicaid. Were there any ambiguity, the word "'any,'" we
are told, "'has an expansive meaning'" that would counsel
against the Court's implicit limitation. *Ante,* at 6. Perhaps
sensing that its claim to natural meaning lacks force, the
Court, at last, acknowledges "background legal principles"
that militate against allowing a lifetime assignment. *Ante,*
at 12. While background principles indisputably are rele-
vant, the Court errs by discarding the more relevant back-
ground rule of insurance law that Congress embraced in the
Act, see *supra,* at 9, which could have avoided the Court's
dilemma altogether.[5]

Over the long term, the Court's alteration of the balance
Congress struck between preserving Medicaid's status as
payer of last resort and protecting Medicaid beneficiaries'
property might frustrate both aims. As a State's right of
recovery from any damages payout expands, a Medicaid
beneficiary's share shrinks, reducing the beneficiary's in-
centive to pursue a tort action in the first place. See Brief

————————

[4] In its briefing, Florida responded to the lifetime-assignment concern
by stating only that its own law did not go so far. Brief for Respondent
45. Confronted anew with the concern at argument, Florida proposed an
implicit "germaneness requirement," see Tr. of Oral Arg. 68–70, which
the Court does not embrace, see *ante,* at 12, n. 5.

[5] The Court does not dispute the background principle that an insurer's
third-party recovery is limited to the elements for which the insurer has
made payment. See *supra,* at 9. The Court responds, however, that Con-
gress clearly displaced this principle in the assignment provision. See
*ante,* at 8, n. 2. That, of course, is the entire question. For the reasons
explained, the Court's reading of the assignment provision is erroneous.

for American Justice Association et al. as *Amici Curiae* 16–20. Under the provisions of the Act at issue here, States may sue tortfeasors directly, but as Florida itself explains, it is "more cost-effective" for beneficiaries to sue. Tr. of Oral Arg. 65. By diminishing beneficiaries' interests in doing so, the Court's expansion of States' assignment rights could perversely cause States to recover fewer overall expenses, all while unsettling expectations in the States that have relied on a contrary reading of federal law.[6]

In the end, the Court's atomizing interpretation has little to commend it, particularly when contrasted with the consistent, administrable scheme Congress crafted. The Court's reading also undercuts Congress' choice to allow Medicaid beneficiaries to place their excess recovery funds in Special Needs Trusts, protecting their ability to pay for important expenses Medicaid will not cover. See n. 1, *supra.* Congress may wish to intercede to address any disruption that ensues from today's decision, but under a proper reading of the Act, such intervention would have been unnecessary.

*　　*　　*

"[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, 439 (1935) (Cardozo, J., dissenting). Because the Court disserves this cardinal rule today, I respectfully dissent.

---

[6] The vast majority of lower courts (including Florida's Supreme Court) read these provisions much as I do. See, *e.g., Latham* v. *Office of Recovery Servs.*, 2019 UT 51, 448 P. 3d 1241; *Giraldo* v. *Agency for Health Care Admin.*, 248 So. 3d 53 (Fla. 2018); *In re E. B.*, 229 W. Va. 435, 729 S. E. 2d 270 (2012); *Doe* v. *Vermont Office of Health Access*, 2012 VT 15A, 191 Vt. 517, 54 A. 3d 474; Pet. for Cert. 18–19 (collecting additional cases).