*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

**H.V.Z.**
Appellant

v.

**UNITED STATES**
Appellee

and

**Michael K. FEWELL, Technical Sergeant**
United States Air Force, Real Party in Interest

**No. 23-0250**
Crim. App. No. 2023-03

Argued December 5, 2023—Decided July 18, 2024

Military Judge: Matthew P. Stoffel

For Appellant: *Major Michael T. Bunnell* (argued); *Major Marilyn S. P. McCall* and *Devon A. R. Wells*, Esq. (on brief).

For Appellee: *Colonel Zachary T. Eytalis* (argued); *Lieutenant Colonel G. Matt Osborn* and *Mary Ellen Payne*, Esq. (on brief); *Colonel Matthew D. Talcott.*

For Real Party in Interest: *Captain Samantha M. Castanien* (argued); *Megan P. Marinos*, Esq. (on brief).

Amici Curiae for Appellant: *Lieutenant Commander Philip J. Corrigan*, JAGC, USN, *Lieutenant*

*Commander Kimberly Rios*, JAGC, USN, and *Lieutenant Titus J. Hattan*, JAGC, USN (on behalf of the United States Navy Special Victims' Counsel) (on brief), and *Elizabeth G. Marotta*, Esq. (on behalf of the United States Coast Guard Special Victims' Counsel Program) (on brief).

Amicus Curiae for Real Party in Interest: *Captain Arthur L. Gaston III*, JAGC, USN, and *Lieutenant Christopher B. Dempsey*, JAGC, USN (on behalf of United States Navy-Marine Corps Appellate Defense Division) (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge JOHNSON joined. Judge MAGGS filed a separate dissenting opinion.

––––––––––––––

Judge HARDY delivered the opinion of the Court.

The Government charged the accused with sexual assault, domestic violence, and wrongful use of a controlled substance. While preparing for his trial, the accused sought discovery of the medical and nonprivileged mental health records of H.V.Z. (Appellant), the alleged victim of the charged offenses. H.V.Z., through her Special Victims' Counsel (SVC), filed a motion opposing the disclosure of most of those records.

After concluding that H.V.Z. lacked standing before the trial court to oppose the accused's discovery motion, the military judge ordered the treatment facility that housed H.V.Z.'s records to produce her medical records and relevant, nonprivileged mental health records. Believing that the military judge's order violated her rights under Article 6b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b (2018), H.V.Z. petitioned the United States Air Force Court of Criminal Appeals (AFCCA) for a writ of mandamus blocking the military judge's order. The AFCCA denied issuance of the writ.

Following the AFCCA's decision, the Judge Advocate General of the Air Force exercised his authority under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2018), to certify the following four issues to this Court for immediate interlocutory review:

> I. Did the military judge err when he determined that H.V.Z.'s DoD health record was in the possession, custody, or control of military authorities pursuant to R.C.M. 701(a)(2)(A) and R.C.M. 701(a)(2)(B)?

> II. Did the military judge err when he did not consider H.V.Z.'s written objection to production of her DoD health record as he found she did not have standing nor a right to be heard?

> III. Whether H.V.Z. must show the military judge clearly and indisputably erred for writ to issue under Article 6b(e), UCMJ, or shall ordinary standards of appellate review apply?

IV. Whether this Court should issue a writ of mandamus?

*H.V.Z. v. United States*, 83 M.J. 483 (C.A.A.F. 2023) (docketing notice).

For the reasons explained below, we begin with the third certified issue and hold that the AFCCA was correct in concluding that H.V.Z. bore the burden of showing that her right to issuance of the writ was clear and indisputable. In applying that standard to the first certified issue, we affirm that the military judge did not clearly and indisputably err in finding that the military treatment facility that housed H.V.Z.'s records qualified as a "military authorit[y]" under Rule for Courts-Martial (R.C.M.) 701(a)(2). However, with respect to the second certified issue, we hold that under Military Rule of Evidence (M.R.E.) 513(e)(2), the military judge was required to provide H.V.Z. with the opportunity to be heard on the production of her mental health records. His failure to do so amounted to clear and indisputable error. Finally, we decline to answer the fourth certified issue and instead remand the case to the AFCCA to decide in the first instance whether—in light of this opinion—a writ should issue.

## I. Background

In January 2023, the convening authority referred multiple charges and specifications against TSgt Michael K. Fewell (the accused and Real Party in Interest) to a general court-martial, including: two specifications of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2018); two specifications of domestic violence in violation of Article 128b, UCMJ, 10 U.S.C. § 928b (2018); and two specifications of wrongful use of a controlled substance, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (2018). H.V.Z. is the accused's ex-wife and the alleged victim of the sexual assault and domestic violence offenses.

After the referral of charges, the accused's defense counsel sought discovery of H.V.Z.'s medical records and any mental health records not protected by the psychotherapist-patient privilege within the Government's possession.

After several months of negotiations between the defense and trial counsel, the Government declined to produce many of the requested records, including any of H.V.Z.'s mental health records. The accused then filed a motion before the trial court seeking an order commanding the Government to produce the health and mental health records previously requested by the defense.

Four days later, H.V.Z., through her SVC, filed a brief opposing the accused's motion to compel, raising multiple arguments why she believed that the accused was not entitled to production of her health and mental health records. The Government also filed a response to the accused's motion, in which it only opposed the production of H.V.Z.'s medical and mental health records from before January 19, 2020, the date of the earliest alleged offense committed against H.V.Z.

The military judge issued a written opinion and order granting many of the accused's requests. In his opinion, the military judge confirmed that he received H.V.Z.'s written opposition to the accused's motion but explained that he did not consider it because H.V.Z. lacked standing before the trial court. As relevant here, the military judge also concluded that: (1) the defense was entitled to the discovery of H.V.Z.'s medical records and relevant, nonprivileged mental health records maintained by the medical treatment facility located at Luke Air Force Base;[1] (2) the defense made a valid request for discovery of the information in accordance with R.C.M. 701(a)(2)(B); and (3) any such records were within the possession, custody, or control of military authorities. The military judge separately ordered the 56th Medical Group (56 MDG) located at Luke Air Force Base to provide the parties with medical, mental health, and Family Advocacy records that pertained to H.V.Z., and to work with a medical law attorney to ensure

---

[1] The order also concluded that the defense was entitled to discovery of relevant records maintained by the Family Advocacy office located at Luke Air Force Base.

that all privileged materials under M.R.E. 513 were redacted prior to production.

Pursuant to Article 6b(e), UCMJ, H.V.Z. petitioned the AFCCA for a writ of mandamus, and requested that the AFCCA order an immediate stay and " 'vacate the trial court's decision to order disclosure of [her] extensive medical records.' " *In re HVZ*, Misc. Dkt. No. 2023-03, at 1 (A.F. Ct. Crim. App. May 19, 2023) (order). The AFCCA stayed the accused's court-martial and the execution of the military judge's order to the 56 MDG. After receiving briefs in response to H.V.Z.'s petition from the Government and the accused, and a reply brief from H.V.Z., the AFCCA issued an opinion denying H.V.Z.'s petition for a writ of mandamus for several reasons. *In re HVZ*, Misc. Dkt. No. 2023-03, 2023 CCA LEXIS 292, at *11-12, 2023 WL 4542948, at *5 (A.F. Ct. Crim. App. July 14, 2023) (unpublished).

First, the AFCCA concluded that "the 'right to be treated with fairness and with respect for the dignity and privacy of the victim' " in Article 6b(a)(9), UCMJ, did not create an independent right for H.V.Z. to be heard at the trial level on any and all matters affecting those rights, other than during presentencing proceedings in accordance with Article 6b(a)(4)(B), UCMJ. *Id.* at *11-12, 2023 WL 4542948, at *5. The AFCCA therefore affirmed the military judge's refusal to consider H.V.Z.'s response to the accused's discovery motion. *Id.*, 2023 WL 4542948, at *5.

Next, the AFCCA found that the military judge did not clearly and indisputably err in concluding that H.V.Z.'s records were possessed by a military authority. *Id.* at *12-13, 2023 WL 4542948, at *5. R.C.M. 701(a)(2)(A)(i) provides an accused access to "papers, documents, [and] data . . . if the item is within the possession, custody, or control of military authorities." The court was satisfied that these requirements were met because H.V.Z.'s records were maintained by the 56 MDG—a unit within the United States Air Force. *Id.* at *13, 2023 WL 4542948, at *5.

The AFCCA's decision was guided by its application of our precedent instructing that a mandamus petition will

only be granted where a petitioner demonstrates a clear and indisputable right to relief. *Id.* at *7, 2023 WL 4542948, at *3 (citing *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012)). Applying that heightened standard, the AFCCA denied H.V.Z.'s petition. *Id.* at *21, 2023 WL 4542948, at *8.

## II. Discussion

Our analysis proceeds in four parts, and we address each certified issue separately. But we must start with the third certified issue because the petitioner's burden to obtain a writ of mandamus under Article 6b(e), UCMJ, controls our answer to the remaining issues.

## A. The Petitioner's Burden Under Article 6b(e), UCMJ

The third certified issue requires us to determine what a petitioner seeking a writ of mandamus pursuant to Article 6b(e), UCMJ, must establish for a reviewing court to grant relief. A petitioner's burden when seeking a writ under Article 6b(e), UCMJ, is a question of law that we review de novo. *United States v. Evans*, 75 M.J. 302, 304 (C.A.A.F. 2016). We also review questions of statutory interpretation de novo. *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017).

Article 6b, UCMJ, guarantees certain rights to victims of UCMJ offenses and establishes procedures for the vindication of those rights. When a victim believes that a military judge's ruling violates her Article 6b rights, Article 6b(e)(1), UCMJ, authorizes the victim to immediately petition the relevant Court of Criminal Appeals (CCA) for a writ of mandamus ordering the trial court to comply with Article 6b, UCMJ. Article 6b, UCMJ, does not specify a victim petitioner's burden of proof when seeking a writ of mandamus from the CCA, but we have held that to prevail on a writ of mandamus, a petitioner generally must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under

the circumstances." *Hasan*, 71 M.J. at 418 (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

H.V.Z. argues that because Article 6b(e), UCMJ, does not specify the petitioner's burden or direct the CCAs to apply any specific standard of review, the AFCCA erred by asking whether the military judge was "clearly and indisputably incorrect." Rather, H.V.Z. contends, the AFCCA should have employed an ordinary appellate standard of review as Congress directed civilian courts to do under the similar Crime Victims' Rights Act (CVRA). *See* 18 U.S.C. § 3771(d)(3) (2018) (directing reviewing courts to "apply ordinary standards of appellate review"). We disagree.

When interpreting legislation, we have long presumed two things: that Congress knows the law, *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979), and that Congress selected the language that it intended to apply. *United States v. Ware*, 1 M.J. 282, 285-86 (C.M.A. 1976). In Article 6b(e), UCMJ, Congress granted victims of UCMJ offenses the opportunity to petition the CCA for a writ of mandamus, but it did not dictate a burden of proof that those victims must establish to obtain a writ. In the absence of a legislative directive establishing otherwise, there is no basis for this Court to deviate from the ordinary burden imposed on writ petitioners, which we presume Congress understood and intended to have apply.

The fact that Congress dictated a lower burden for victims seeking writs of mandamus under the CVRA does not alter our analysis. To the contrary, that Congress included such language in the CVRA—but omitted it from Article 6b, UCMJ—only underscores our duty to refrain from reading a provision into Article 6b, UCMJ, when Congress has left it out. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993). We must give effect to, not nullify, Congress's choice to include a lower burden in the CVRA, but not in Article 6b, UCMJ. *Gallardo v. Marstiller*, 596 U.S. 420, 431 (2022).

In 2012, this Court established in *Hasan* that a petitioner seeking a writ of mandamus from a CCA must show

that the military judge clearly and indisputably erred for the writ to issue. 71 M.J. at 418. Nothing in the original text of Article 6b, UCMJ, enacted in 2013,[2] or in any of the subsequent amendments to that article suggests that Congress intended any deviation from that standard. H.V.Z. did not ask us to overturn *Hasan*, and we see no reason to question the Court's reasoning in that case. Thus, the AFCCA correctly held that H.V.Z. was required to establish a clear and indisputable right to a writ of mandamus.

## B. Military Authorities Under R.C.M. 701

Guided by our answer to the preceding question, we must now answer the first certified issue and decide whether the military judge committed clear and indisputable error when he determined that H.V.Z.'s health and mental health records were in the possession, custody, or control of military authorities. For the reasons explained below, we hold that he did not.

"The interpretation of provisions of the R.C.M. . . . are questions of law that we review de novo." *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008). "To justify reversal of a discretionary decision by mandamus, the judicial decision must amount to more than even gross error; it must amount to a judicial usurpation of power, or be characteristic of an erroneous practice which is likely to recur." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (citations omitted) (internal quotation marks omitted).

As relevant here, R.C.M. 701(a)(2)(A) allows the defense to inspect, "any books, papers, documents, data . . . or copies of portions of these items, if the item *is in the possession, custody, or control of military authorities*," and meets certain other requirements. (Emphasis added.) Similarly, R.C.M. 701(a)(2)(B) gives the defense access to "the results or reports of physical or mental examinations . . . which are

---

[2] National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113–66, § 1701(a)(1), 127 Stat. 672, 952 (2013).

within the possession, custody, or control of military authorities" and meet certain other requirements.

H.V.Z. argues that the military judge committed clear and indisputable error in concluding that the 56 MDG is a military authority for the purposes of R.C.M. 701 because—in her view—that term does not include medical treatment facilities. Instead, relying primarily on this Court's decision in *United States v. Stellato*, 74 M.J. 473, 484 (C.A.A.F. 2015), H.V.Z. asserts that "military authorities" is a term of art that specifically refers to the prosecution team.

As an initial matter, H.V.Z.'s reliance on *Stellato* is misplaced because that decision did not limit the scope of "military authorities" to include only the prosecution team as she suggests. *Stellato* concerned R.C.M 701(a)(2)(A)'s application when a local sheriff's department—and not the military—was in possession of a piece of relevant evidence. *Id.* at 484. Although the Court agreed that objects retained by *state* law enforcement agencies are generally not in the possession, custody, or control of *military* authorities, the Court nevertheless held that "trial counsel cannot avoid R.C.M. 701(a)(2)(A)" by leaving evidence with a nonmilitary agency and continuing to use it at their own discretion during trial preparations. *Id.* Contrary to H.V.Z.'s view, *Stellato* did not narrow the definition of "military authorities" but merely clarified that evidence might still be within the control or constructive custody of military authorities even if it is not strictly within their possession or actual custody.[3]

---

[3] The references in *Stellato* to the "prosecution team" are easily understood based on the specific facts of that case, where the prosecution team was the specific military authority that the appellant claimed had control of the evidence. As Judge Stucky correctly noted in his concurrence: "Of course, it matters not whether the item is within the possession, custody, or control of the prosecution team. The issue is whether it is in the possession, custody, or control of military authorities." *Stellato*, 74 M.J. at 492 n.1 (Stucky, J., concurring in the result).

Because neither *Stellato* nor any of the other authorities cited by H.V.Z. narrowed the definition of "military authorities" in R.C.M 701(a)(2)(A), whether the military judge clearly and indisputably erred turns on whether the plain meaning of "military authorities" can be construed to include the 56 MDG. Considering the deference afforded to the military judge in the procedural posture of this case, we conclude that it can.

There appears to be no dispute among the parties that the 56 MDG is part of the military. The AFCCA described the 56 MDG as "a unit within the United States Air Force" *In re HVZ*, 2023 CCA LEXIS 292, at *13, 2023 WL 4542948, at *5—a factual finding that is not clearly erroneous. The 56 MDG is a medical treatment facility located on Luke Air Force Base that serves active duty military members, retirees, and their families.[4] The 56 MDG is commanded by an Air Force officer and its mission includes "military readiness."[5]

The more difficult question is whether the 56 MDG is a military authority for the purposes of R.C.M. 701(a)(2)(A). *Black's Law Dictionary* defines an "authority" as "[a]n official organization or government department with particular responsibilities and decision-making powers; esp., a governmental agency or corporation that administers a public enterprise." *Authority, Black's Law Dictionary* (11th ed. 2019). The 56 MDG—an Air Force unit tasked with "providing great healthcare, promoting safety and wellness, and military readiness"[6]—would seem to fit that definition. H.V.Z. argues that "authorities" should not be construed so broadly but instead should be narrowly interpreted to mean only military investigative authorities. She warns that to hold otherwise would render all medical

---

[4] 56th Medical Group, https://www.luke.af.mil/Units/56th-medical-group/ (last visited June 13, 2024).

[5] *Id.*

[6] *Id.*

records housed at military medical treatment facilities susceptible to discovery under R.C.M. 701 without sufficient judicial process.

In the absence of any express limiting language in the rule or any limiting guidance from our precedent, we cannot say that the military judge clearly and indisputably erred by concluding that the 56 MDG was a "military authorit[y]" for the purposes of R.C.M. 701(a)(2)(A). And although H.V.Z. raises reasonable concerns about victim privacy, we agree with the court below that those concerns cannot—at least in this procedural context—overcome the absence of any limiting legal authority.[7]

To be clear, nothing in this opinion should be construed as definitively holding that the 56 MDG is a military authority for the purposes of R.C.M. 701(a)(2)(A). Rather, we hold only that the military judge did not clearly and indisputably err in finding that the 56 MDG was a military authority in this instance.

### C. H.V.Z.'s Standing to Oppose Discovery of Her Mental Health Records

Next, we turn to the second certified issue and determine whether the military judge clearly and indisputably erred in concluding that H.V.Z. did not have standing to oppose the production of her medical and mental health records. Whether a victim has standing to litigate a motion to compel her medical and mental health records is a question of law that we review de novo. *United States v.*

---

[7] The Government argues, and the AFCCA agreed, that H.V.Z.'s concerns about victim privacy are overstated because both the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, and the relevant DoD regulations set out a process for discovery of patient health records. *See In re HVZ*, 2023 CCA LEXIS 292, at *18, 2023 WL 4542948, at *7 ("[I]t is not accurate to say that finding medical records maintained by an Air Force medical group are within the possession, custody, or control of military authorities means they are accessible 'without process.'"). We need not weigh in on that debate to resolve this issue.

*Gilbreath*, 74 M.J. 11, 15 (C.A.A.F. 2014); *see also LRM v. Kastenberg*, 72 M.J. 364, 369 (C.A.A.F. 2013). But as we have established, our ultimate decision in reviewing H.V.Z.'s mandamus petition asks whether the military judge clearly and indisputably erred in denying an alleged victim the right to be heard at trial. For the reasons explained below, we conclude that he did.

Before this Court, H.V.Z. makes various arguments in support of her view that she had standing to oppose the accused's motion to compel discovery of her medical and mental health records. First, relying on her argument that her records held by the 56 MDG are not "under [the] control of the Government," H.V.Z. asserts that R.C.M. 703(g)(3)(C)(ii) and R.C.M. 703(g)(3)(G) grant her the right to oppose the accused's discovery motion and to seek appropriate relief. Next, H.V.Z. argues that even if R.C.M. 703(g)(3) does not apply, the statutory right of alleged victims under Article 6b(a)(9) to be treated with fairness and with respect for their dignity and privacy grants her the right to be heard and to oppose the accused's motion. Finally, H.V.Z. argues that general principles of fairness and due process should grant her the right to protect her private medical and mental health records from disclosure even in the absence of any statute or rule expressly granting her standing to do so. In this opinion we need not—and do not—address these arguments because there is a much more straightforward reason why the military judge clearly and indisputably erred by concluding that H.V.Z. did not have standing to oppose the accused's motion to compel.

Before the trial court, the accused filed a motion to compel the production of H.V.Z.'s "medical records and *non-privileged materials within mental health records*." Defense Motion to Compel Discovery of Evidence at 1, *United States v. Fewell* (U.S. Dep't of the Air Force, Trial Judiciary Apr. 28, 2023) (attachment to certificate for review, *H.V.Z. v. United States and Fewell*, No. 23-0250 (C.A.A.F. Sept. 11, 2023)) [hereinafter Motion to Compel] (emphasis added). In that motion, the accused requested that the

military judge "order the government to immediately secure and produce" the requested records, and provided the trial court with a draft order should the motion be granted. *Id.* at 14. The proposed draft would have ordered the 56 MDG to produce H.V.Z.'s records, including those related to: (1) "Dates and times of visits to mental health providers"; (2) "Content of current and past lists of prescription medications"; (3) Current and past medical diagnoses, including mental health diagnoses"; (4) "Any *treatment or treatment plan* for such diagnosis or diagnoses"; and (5) "Any and all medical records." *Id.* at 36.

The accused's motion to compel expressly raised the issue of the production and admissibility of H.V.Z.'s mental health records before the trial court. In addition to requesting that the court secure the records and produce them to the parties, the motion argued that the requested mental health records were both relevant and necessary to the preparation of the accused's defense. Because the accused anticipated that the Government would request in camera review of the records prior to any production, the motion argued that in camera review was not appropriate. And because the accused's counsel knew that H.V.Z.'s SVC intended to oppose the motion to compel, the accused preemptively asserted that H.V.Z. had no standing to do so.

When a party seeks an interlocutory ruling from a military judge that places the production or admission of mental health records of a patient other than the accused in dispute, the President has promulgated specific procedures in M.R.E. 513(e) to protect the patient's privacy interests. The procedures in M.R.E. 513(e)(1) and M.R.E. 513(e)(2) apply to *all* instances in which a party seeks the production or admission of a patient's mental health records or communications, while the stricter procedures in M.R.E. 513(e)(3) only apply when the moving party seeks production or admission of mental health records that are protected from disclosure by the psychotherapist-patient privilege in M.R.E. 513(a). *Compare* M.R.E. 513(e)(1) ("In any case in which the production or admission of records or communications of a patient other than the accused is in

dispute . . . ."), *and* M.R.E. 513(e)(2) ("Before ordering the production or admission of evidence of a patient's records or communication . . . ."), *with* M.R.E. 513(e)(3) (addressing "the production or admissibility of *protected* records or communications") (emphasis added). In this case, because the accused only sought production of H.V.Z.'s nonprivileged mental health records, only the procedures in M.R.E. 513(e)(1) and M.R.E. 513(e)(2) applied.

As relevant here, M.R.E. 513(e)(1) requires the party seeking the ruling from the military judge to file a written motion at least five days prior to entry of pleas specifically describing the evidence to be produced and stating the purpose for which it is sought. M.R.E. 513(e)(1)(A). The rule also requires the moving party to serve the motion on the opposing party and the military judge and to notify the patient or her representative that the motion has been filed and that the patient has the opportunity to be heard on the motion. M.R.E. 513(e)(1)(B). The record establishes that the accused filed the requisite written motion and served it on the Government and the military judge. The record further supports the conclusion that counsel for the accused at least notified H.V.Z.'s SVC of the motion. *See* Motion to Compel at 1 (notifying the military judge that "Victim's Counsel has forecast that it intends to oppose the Defense's motion"); VC Response to Defense Motion to Compel Discovery at 10, *United States v. Fewell* (U.S. Dep't of the Air Force, Trial Judiciary May 2, 2023) (attachment to certificate for review, *H.V.Z. v. United States and Fewell*, No. 23-0250 (C.A.A.F. Sept. 11, 2023)) [hereinafter SVC Response] (mentioning "the parties' informal discussions regarding the appropriate means of handling these records"). In any event, H.V.Z. has not complained that the accused failed to provide her with sufficient notice.

More importantly for this case, M.R.E. 513(e)(2) demands that prior to ordering the production of a patient's mental health records, the military judge must conduct a closed hearing and the patient "*must* be afforded a reasonable opportunity to attend the hearing and be heard." (Emphasis added.) The rule further explains that

15

the victim's "right to be heard under this rule includes the right to be heard through counsel, including Special Victims' Counsel under section 1044e of title 10, United States Code." M.R.E. 513(e)(2). The President's repeated use of the word "must" in M.R.E. 513(e)(2) indicates that these processes are mandatory.[8] In her response to the accused's motion to compel (that the military judge did not consider), H.V.Z. correctly cited M.R.E. 513(e)(2) and asserted that before ordering production of evidence under M.R.E. 513, the military judge must conduct a closed hearing and provide H.V.Z. with an opportunity to be heard. SVC Response at 3-4.

Once a party—in this case the accused—sought a ruling from the military judge seeking the production of H.V.Z.'s mental health records, the mandatory procedural protections guaranteed by M.R.E. 513(e) should have been triggered. *Mellette*, 82 M.J. at 379 ("M.R.E. 513(e) establishes a procedure to determine the admissibility of patient records or communications."). Those protections included H.V.Z.'s right to be heard on the production and admission of her mental health records under M.R.E. 513(e)(2). The military judge's refusal to consider H.V.Z.'s motion violated the plain language of M.R.E. 513(e)(2) and deprived H.V.Z. of the protections guaranteed to all mental health patients by the President.

Given the plain language of M.R.E. 513(e), we believe that H.V.Z. had a clear and indisputable right to be heard with respect to the accused's motion to compel. As we explained above, the procedural protections in M.R.E. 513(e)(1) and M.R.E. 513(e)(2) apply in "any case" in which the production or admission of "records or communications" of a patient other than the accused is a matter in dispute. The President's use of the broad phrase "records

---

[8] Because M.R.E. 513(e)(1) refers to any case in which the production of the victim's mental health records "is a matter in dispute," military judges need not comply with these procedural requirements when neither the opposing party nor the patient opposes the production or admission of the patient's records.

or communications" in these subsections of the rule stands in stark contrast to narrower language that defines the scope of the psychotherapist-patient privilege in M.R.E. 513(a).

Indeed, this Court's decision in *Mellette* narrowly construing the psychotherapist-patient privilege turned primarily on M.R.E. 513(a)'s protection only of "confidential communications" between a patient and a psychotherapist. 82 M.J. at 378. The Court specifically noted that the President elected not to use broader language in M.R.E. 513(a)—like the broader language in M.R.E. 513(e)(1) and M.R.E. 513(e)(2)—that would have included all patient mental health records within the psychotherapist-patient privilege. *Id.* But just because a mental health record is not privileged under M.R.E. 513(a), does not mean that it is excluded from the procedural protections provided by M.R.E. 513(e)(1) and M.R.E. 513(e)(2). As the Court held in *Mellette*, even if the patient's medical records are *not* privileged under M.R.E. 513(a), the production or admission of those records is still "subject to the procedural requirements of M.R.E. 513(e)." *Id.* at 381.

Notably, the accused has made statements in his written filings in this case that appear to recognize that M.R.E. 513(e)(2) grants named victims the right to be heard when a party seeks production of their medical records. In his motion to compel, the accused implicitly recognized that M.R.E. 513 provides standing to a named victim to object or to be heard in response to a discovery motion for her mental health records. *See* Motion to Compel at 12 (noting that *unlike* M.R.E. 513, the other provisions cited by H.V.Z. "do not provide standing to a named victim, either to object or 'to be heard' "). And in his brief before this Court, the accused stated: "Certain other provisions, read in conjunction with Article 6b, UCMJ, require the military judge to allow the named victim to be heard. *See*, *e.g.*, Mil. R. Evid. . . . 513(e)(2) (noting the patient whose records are at issue has the right to be heard)." Answer on Behalf of Real Party in Interest at 29, *H.V.Z. v. United States and Fewell*, No 23-0250 (C.A.A.F. Sept. 25, 2024).

M.R.E. 513(e)(2) granted H.V.Z. the right to be heard in response to the accused's motion to compel the seizure and production of her nonprivileged mental health records. By denying H.V.Z. that right, the military judge committed a clear and indisputable error. To be clear, beyond our rulings on the first and third certified issues, we offer no opinion on the merits of the military judge's ruling with respect to the accused's motion to compel. We hold only that he was required by the plain language of M.R.E. 513(e) and our ruling in *Mellette* to grant H.V.Z. the opportunity to be heard.[9]

### D. Issuance of a Writ of Mandamus

Finally, we turn to the fourth certified issue—whether this Court should issue a writ of mandamus. Because Article 6b, UCMJ, expressly grants the authority to issue the writ to the CCAs, we believe the AFCCA is better suited to address that question. Accordingly, we reiterate that the military judge's denial of H.V.Z.'s right to be heard under M.R.E. 513(e)(2) was a clear and indisputable error and remand the case to the AFCCA to decide—consistent with this opinion—whether H.V.Z. should prevail on her writ of mandamus.

### III. Conclusion

For the abovementioned reasons, we affirm the decision of the United States Air Force Court of Criminal Appeals on the first and third certified issues, reverse its decision on the second certified issue, and remand the case for further consideration in light of this opinion.

---

[9] Nothing in this opinion should be interpreted as abrogating the authority of military judges to manage discovery under R.C.M. 701 and R.C.M. 703 when the production of mental health records is in dispute. We hold only that M.R.E. 513(e) establishes mandatory minimum procedures to protect the privacy rights of patients with respect to the production or admission of their mental health records.

Judge MAGGS, dissenting.

Military Rule of Evidence (M.R.E.) 513(e)(2) provides that "[b]efore ordering the production . . . of a patient's records . . . the military judge must conduct a hearing" and that the "patient must be afforded a reasonable opportunity to attend the hearing and be heard." The Court holds that this rule required the military judge to allow Appellant, H.V.Z., to contest the production of her nonprivileged mental health records. The Court remands the case to the United States Air Force Court of Criminal Appeals (AFCCA) for further consideration.

I disagree with the Court's action because, in my view, it is improper under the applicable standard of review. In this case, H.V.Z. is seeking a writ of mandamus. Our precedent has established that to succeed on a petition for a writ of mandamus, the "[a]ppellant must show [in part] that . . . the right to issuance of the writ is clear and indisputable." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012). Here, H.V.Z. did not show that M.R.E. 513(e)(2) gave her a clear and indisputable right to a writ of mandamus for a simply stated reason: H.V.Z. did not cite M.R.E. 513(e)(2) or make any argument about this rule in her briefs before this Court or the AFCCA. I therefore respectfully dissent.

At the request of Real Party in Interest, Technical Sergeant Michael K. Fewell (i.e., the accused), the military judge in this ongoing court-martial ordered the 56th Medical Group at Luke Air Force Base to produce H.V.Z.'s medical, mental health, and family advocacy records, after redacting any privileged communications from them. The military judge concluded that these records were discoverable under Rule for Courts-Martial (R.C.M.) 701(a)(2)(B), which provides in part:

> [U]pon request of the defense, the Government shall permit the defense to inspect the results or reports of physical or mental examinations . . . which are within the possession, custody, or control of military authorities . . . if
>
> > (i) the item is relevant to defense preparation.

Although H.V.Z. objected to the production order, the military judge did not consider her objection because the military judge concluded that she lacked standing.

H.V.Z. sought review of the military judge's order and findings by petitioning the AFCCA for a writ of mandamus under Article 6b(e), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 806b(e) (2018). H.V.Z. argued that the production order violated her right to privacy under both Article 6b(a)(9), UCMJ, and the Fourth Amendment of the United States Constitution. H.V.Z. also contended that the documents were not discoverable under R.C.M. 701(a)(2)(B) for two reasons. First, she argued that the military judge had failed to make a determination about whether the records were relevant to defense preparation. Second, she averred that her records were not within the possession, custody, or control of the Government because trial counsel and other officials could not freely review her records; they could access the records only if they complied with federal privacy laws. H.V.Z. further argued that because the medical records were not within the possession, custody, or control of military authorities, R.C.M. 703(g)(3)(C)(ii) applied to the production of her records and this rule required the military judge to provide her an opportunity to object before issuing a subpoena for the records. Importantly, however, H.V.Z. *did not cite or make any argument with respect to M.R.E. 513(e)(2) in either the petition for relief or the reply* that she submitted to the AFCCA.

The AFCCA denied relief, reasoning that H.V.Z. had "fail[ed] to demonstrate the military judge was clearly and indisputably incorrect" in his ruling. *In re HVZ*, Misc. Dkt. No. 2023-03, 2023 CCA LEXIS 292, at *12, 2023 WL 4542948, at *5 (A.F. Ct. Crim. App. July 14, 2023) (unpublished). The AFCCA rejected H.V.Z.'s privacy argument under Article 6b, UCMJ, reasoning that the statute "does not *create* the right to be heard *by the trial court* on any and all matters affecting those rights." *Id.* at *12, 2023 WL 4542948, at *5. The AFCCA considered H.V.Z.'s arguments with respect to R.C.M. 701(a)(2)(B) and R.C.M. 703(g)(3)(C)(ii), but determined that she had not met her burden to demonstrate that she was clearly and

indisputably entitled to relief under these rules. *Id.* at \*13, \*18, 2023 WL 4542948, at \*5, \*7. The AFCCA reasoned that "it is possible for non-privileged but sensitive personal records to be in the possession of military authorities." *Id.* at \*17, 2023 WL 4542948, at \*7. The AFCCA did not address the issue of whether H.V.Z. was entitled to object under M.R.E. 513(e)(2), presumably because H.V.Z. did not make any argument about that rule.

Before this Court, H.V.Z. did not cite M.R.E. 513(e)(2) in either her fifty-five-page initial brief or her twenty-seven-page reply brief. Indeed, out of all the briefs and amicus curiae briefs filed in this Court, only one even mentions M.R.E. 513(e)(2). The Real Party in Interest notes the existence of the rule but asserts—correctly—that it is not "the basis for Appellant's perceived violation of her rights." And at oral argument, H.V.Z.'s counsel made no argument related to M.R.E. 513(e)(2) until the provision was raised sua sponte in questions from the Court.

Under these circumstances, I cannot agree that H.V.Z. has shown that M.R.E. 513(e)(2) entitled her to a clear and indisputable right to the writ of mandamus. Showing a right to a writ of mandamus is a demanding burden. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004). A petitioner cannot meet this burden through an argument that the petitioner does not even make. *In re MaxPower Semiconductor, Inc.*, 13 F.4th 1348, 1352 (Fed. Cir. 2021) (declining to issue a writ of mandamus based on a theory that the dissent offered sua sponte and that relied on cases not cited by the petitioner)*; see also In re Itron, Inc.*, 883 F.3d 553, 570 n.1 (5th Cir. 2018) (Dennis, J., dissenting) (explaining that a "court may not grant the drastic and extraordinary relief of mandamus based on arguments that it raises sua sponte"). In my view, the Court should express no opinion on the potential import of M.R.E. 513(e)(2) because H.V.Z. did not preserve or present any argument about that rule. Instead, the Court should wait until arguments concerning the rule are properly presented and fully briefed.

Finally, I have carefully considered the arguments that H.V.Z. actually made before the AFCCA and that she now makes before this Court. I agree with the AFCCA's

reasoning that H.V.Z. has not shown that Article 6b, UCMJ, established a clear and indisputable right to be heard at trial on the production motion. The language of Article 6b, UCMJ, does not expressly provide this right and no precedent has addressed the issue. Similarly, I agree with the AFCCA's reasoning that H.V.Z. cannot show that she has a clear and indisputable right to the writ of mandamus under R.C.M. 701(a)(2)(B) or R.C.M. 703(g)(3)(C)(ii) because it is not clear and indisputable that records held by the 56th Medical Group at Luke Air Force Base are not within the possession, custody, or control of the Government. I therefore would affirm the decision of the AFCCA.